UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                    No. 94-5757

PAULA V. MOSS,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Newport News.
J. Calvitt Clarke Jr., Senior District Judge.
(CR-94-35)

Argued: May 5, 1995

Decided: July 12, 1996

Before NIEMEYER and MOTZ, Circuit Judges, and PHILLIPS,
Senior Circuit Judge.

_____

Affirmed by unpublished opinion. Senior Judge Phillips wrote the
opinion, in which Judge Niemeyer and Judge Motz joined.

_____

**COUNSEL**

**ARGUED:** Thomas W. Carpenter, OVERMAN, COWARDIN &
MARTIN, P.L.C., Newport News, Virginia, for Appellant. Robert
Edward Bradenham, II, Assistant United States Attorney, Norfolk,
Virginia, for Appellee. **ON BRIEF:** Leonard A. Bennett, OVER-
MAN, COWARDIN & MARTIN, P.L.C., Newport News, Virginia,
for Appellant. Helen F. Fahey, United States Attorney, Brian G. Mur-

phy, Third Year Law Student, REGENT UNIVERSITY, Norfolk, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PHILLIPS, Senior Circuit Judge:

Following a bench trial, appellant Paula Moss was convicted of possessing cocaine base with the intent to distribute in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 and with conspiracy to possess cocaine base in violation of 21 U.S.C. § 846. Moss now appeals, raising several issues regarding her conviction and sentence. Finding no error, we affirm.

I

Viewed in the light most favorable to the government, the evidence at trial established the following facts. On January 31, 1994, a private security officer at Woodsong Apartments in Newport News, Virginia received an anonymous tip that a shipment of cocaine would be delivered to an apartment within the complex. According to the informant, the United Parcel Service (UPS) would be delivering a shipment of cocaine from Texas to 5571 Orcutt Avenue, Newport News, Virginia. The security officer notified his supervisor, who instructed the officer to direct the UPS delivery driver to the security office upon his arrival. Within thirty minutes of this conversation, the UPS truck arrived and the security officer directed him to the security office as he had been instructed. The UPS driver confirmed that he was to deliver a suitcase from Texas to the appellant, Paula Moss, at 5571B Orcutt Avenue Apartment D. Paula Moss was the sole lessee of the apartment. At the request of the chief security officer, the UPS driver left the complex without delivering the parcel so that the police could be notified. Later that same day, the chief security officer advised the police of the situation.

2

Detective Richard Dawes of the Newport News vice and narcotics squad contacted Vincent Monoit, Loss Prevention Manager at the Newport News UPS Distribution Center regarding the suitcase. Monoit and Dawes arranged to meet the next morning. According to Detective Dawes, the police already had received a somewhat less specific tip from a paid informant that Moss and Travis Nocentelli, the father of two of Moss's children, would be receiving a "load" of cocaine at Moss's apartment.

The next morning, Newport News police officers arrived at the UPS Center with a dog trained to detect narcotics in closed packages. Monoit immediately informed the police officers that under UPS regulations he had the right to "check" the suitcase which because of a broken zipper had contents visibly protruding from its side. The police requested that, instead, he place the suitcase on a conveyor belt along with approximately ten other packages to be sniffed by the dog. Although the dog hesitated by the target suitcase, it did not "alert" to it or any of the others.

The police officers then informed Monoit that they were finished with the suitcase. Monoit told Detective Dawes that he "was going to repack the package because it couldn't go out for delivery in the condition it was in." In response to Monoit's statement that he was going to repack the suitcase, Dawes said that the police officers were leaving and Monoit could do as he chose, but that he was not repacking the suitcase in furtherance of police business. The police officers then began to leave the area and Monoit began preparing the package for delivery.

In the process of repacking the suitcase, Monoit opened it. When he picked up a high-topped leather shoe that was in the suitcase, a small glassine bag filled with a white powdery substance fell out. Monoit yelled, "What's this?" to the departing police officers, who were then approximately twenty feet away, and who immediately returned to the scene of Monoit's activity. Ultimately, five more glassine bags filled with a white powdery substance were recovered from the shoe. An electronic digital scale was also found in the suitcase.

The police officers used the digital scale to weigh all six baggies and found that each weighed approximately one ounce. Detective

3

Wayne Litz coated one of the baggies with a petroleum jelly substance and then applied a fluorescent ultraviolet (UV) detection powder to the baggie that is invisible in ordinary light but glows in black light. Litz placed the baggie inside the shoe, which he then returned to the suitcase. Litz washed his hands after this process, but did not check them with a black light in order to exclude the possibility that he would transfer UV powder to others. Another Government agent placed a radio-transmitting tracking device into the suitcase that could signal the exact moment when the suitcase was opened. The police officers retained the remaining five baggies so that they could be tested for the presence of cocaine.

Detective Larry Taylor then dressed in a UPS uniform and rode with Monoit in a UPS delivery truck to Moss's apartment. Detective Taylor knocked on Moss's door and announced a delivery for Paula Moss. Moss answered and signed for the suitcase. About two minutes later, the radio transmitter indicated that the suitcase had been opened. Having previously obtained a search warrant for the apartment, the police officers forced their way into the apartment.

They found Moss and three other adults in the apartment. Moss was sitting on a couch in the living room with the suitcase open beside her. Moss's twin brother, Paul Moss, was standing across the living room holding the digital scales. Travis Nocentelli and Oliver Copeland were in the dining area adjacent to the living room. Although the shoe was on the living room floor, the police officers could not locate the glassine baggie.[1]  A search of the apartment revealed an electronic scale on top of the refrigerator and a set of hand scales in a kitchen drawer. Nocentelli had a pager secured to his waist.

The officers handcuffed the four adults. Detective Belinda Baker read Moss her <u>Miranda</u> rights. Moss stated that she understood her

_____

[1] The police officers first suspected that Nocentelli had swallowed the baggie. Nocentelli remained quiet during the search of the apartment. Using a black light at the police station, police officers determined that Nocentelli had traces of UV powder on his lips and on the roof of his mouth. Blood and urine tests, which were performed on Nocentelli at a hospital, failed to reveal any cocaine.

4

rights, but decided to waive her right to remain silent. She stated to Baker that she was in a hallway upstairs in the apartment complex when the UPS delivery person knocked on her door. She stated that she came downstairs only because she was being "nosy." Contrary to the testimony of Detective Taylor, who had posed as the UPS delivery person, Moss maintained that she signed for the package outside the apartment. She told Baker that she merely placed the suitcase inside her apartment door before returning to the upstairs portion of the complex.

All four adults were led into the bedroom where the lights were turned off to allow for the detection of the UV powder. Litz uncuffed Nocentelli and checked him with the black light first. Nocentelli had "layers" of powder on his body. Either Dawes or Litz uncuffed the other three persons and Litz performed the testing process. Moss had traces of detection powder on her fingers, palms, and on one of her forearms. Both Moss's brother and Oliver Copeland had traces of detection powder on various body parts. Litz did not conduct a separate procedure while checking the four adults in order to determine whether any powder had been transferred to him. He testified, however, that he never saw any powder on himself while checking the four with the black light.

The five baggies seized at the UPS Center were tested and found to contain 137.7 grams of cocaine base. Moss and Nocentelli were charged with conspiracy to distribute in excess of 50 grams of cocaine base in violation of 21 U.S.C. § 846 and possession of 28 grams of cocaine base with intent to distribute in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2.

Moss moved pre-trial to suppress the evidence obtained in Monoit's search of the suitcase at the UPS Center. Moss waived her right to a jury trial and the district court decided to consider the motion to suppress in the course of conducting the bench trial. Following this procedure, the court denied the motion to suppress, holding that the search by a UPS employee did not amount to state action and at the conclusion of the bench trial found Moss guilty on both counts of the indictment. In the course of the combined motion hearing/bench trial, the Government introduced without objection evidence of the two informant tips--one to the private security officers,

the other to police officers--that Moss (and Nocentelli) were expecting the cocaine shipment.

At her sentencing hearing, Moss argued that the district court could not consider the amount of cocaine base that the unrecovered baggie may have contained. The district court disagreed and found that the unrecovered baggie contained the same amount of cocaine base as the average of the five recovered baggies. After rejecting Moss's argument that her base offense level should be reduced because she played a minor role in the conspiracy, the court assigned Moss an offense level of 34. The court sentenced Moss to concurrent sentences of 170 months on each of her two counts.

This appeal followed.

II

Moss first contends that the district court erred by denying her motion to suppress the evidence discovered in the course of Monoit's inspection of the suitcase, claiming that in conducting the inspection, Monoit was acting as an agent of the Government. **2**

Axiomatically, the Fourth Amendment does not apply to the actions of private citizens acting privately. Burdeau v. McDowell, 256 U.S. 465 (1921). But, as axiomatically, "[t]he government may not do, through a private individual, that which it is otherwise forbidden to do"--such as conduct warrantless searches in the absence of exigent circumstances that make them reasonable. United States v. Feffer, 831 F.2d 734, 737 (7th Cir. 1987). The question here, therefore, is whether in opening the suitcase and discovering its illegal contents Monoit was acting as a private citizen or as an "`instrument' or agent of the state." Coolidge v. New Hampshire, 403 U.S. 443, 487 (1971). That question is essentially one of fact, based on the particular circumstances, but the factual inquiry is one guided by common law agency principles. United States v. Koenig, 856 F.2d 843, 847 n.1 (7th

_____

**2** Moss's contention is confined to Monoit's conduct in discovering those items of contraband that his private search disclosed. She does not raise any question about items that may have been independently discovered by the police after they rejoined Monoit.

6

Cir. 1988). Of critical importance, for an agency relationship between a private citizen and the government to exist, both parties must have manifested their consent to that relationship, either expressly or by necessary implication from their conduct. Id.  Highly relevant to that issue is "whether the government knew of and acquiesced in the intrusive conduct and whether the private party's purpose for conducting the search was to assist law enforcement agents or to further his own ends." Feffer, 831 F.2d at 739; see also United States v. Walther, 652 F.2d 788, 792 (9th Cir. 1981). While, within these principles, Government knowledge of the private person's conduct obviously is critical, it is not enough, standing alone, to establish the requisite agency. See United States v. Kinney, 953 F.2d 863, 865 (4th Cir. 1992). And, relatedly, the failure of government actors to prevent a private person from conducting a search that they could not themselves conduct lawfully, does not, standing alone, make the private person's conduct that of the Government. See W.R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment, § 1.8(b), at 181 (2d ed. 1987).

Applying these principles, the district court determined that Monoit did not act as an agent of the Government in conducting the search at issue. We cannot find any clear error in the factual predicates for that ruling, or any error of law in applying controlling law to the facts found. Specifically, the court found that, though the Government actors on the scene obviously knew both that Monoit intended to open the suitcase, and later, that in doing so he was discovering illegal substances, they "were not in any way supervising or suggesting to Mr. Monoit . . . that he . . . take any further action about the bag." On the evidence of record, that critical finding is not clearly erroneous. Furthermore, the evidence suffices to support a finding that in opening the suitcase for repackaging its protruding contents, Monoit was acting in accordance with his company's policies and to "further [its] own ends." Feffer, 831 F.2d at 739.

We therefore conclude that the district court did not err in refusing to suppress the fruits of Monoit's private search of the suitcase contents.

III

Moss challenges the sufficiency of the evidence to convict her on the charge of possession with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

7

To convict under § 841(a)(1) the Government must prove that the defendant "(1) knowingly (2) possessed a controlled substance (3) with the intent to distribute it." United States v. Samad, 754 F.2d 1091, 1096 (4th Cir. 1984). Moss's specific challenge is to the sufficiency of the evidence to support the district court's required findings of possession and knowledge.[3] Our sufficiency review is to determine whether as to each of these elements "there is substantial evidence, taking the view most favorable to the Government, to support [those findings]." Glasser v. United States, 315 U.S. 60, 80 (1942). To meet this test, the evidence need not exclude every reasonable hypothesis of innocence. Holland v. United States, 348 U.S. 121, 139-40 (1954).

Reviewing under that standard, we find the evidence sufficient to prove both possession and knowledge.

As to whether she ever "possessed" the baggie containing cocaine, Moss points out that the only evidence of her actual physical possession was the presence of the detection powder on her fingertips, palms and forearm. This, she says, might have resulted from contacts with others present, including the police officers themselves, rather than from her direct handling. Those are indeed reasonable hypotheses of innocent conduct that are not excluded by the evidence, but, as indicated, they need not be in order to support a finding of actual possession, which on this evidence was at least an equally reasonable hypothesis.

Even if it were assumed that the detection powder's trace on her was not sufficient to support a finding of actual possession, there was undisputed evidence of at least constructive possession, which suf-

_____

**3** Moss does not, in making her insufficiency claim as to the § 841 conviction, specifically challenge the court's finding of "intent to distribute," a finding that was based on the amount found by the court to have been contained in the missing "controlled-delivery" baggie. Though Moss does specifically challenge the court's finding of that amount for sentencing purposes, see post Part V, we assume that her failure to raise it in her insufficiency challenge is a proper concession that the amount found--approximately 28 grams--was enough, if properly found, to support an inference of intent to distribute. See , e.g. Samad, 754 F.2d at 1096.

8

fices. See United States v. Laughman, 618 F.2d 1067, 1074 & n.7 (4th Cir. 1980). Specifically, it is undisputed that Moss accepted delivery of the suitcase and took it into possession at a time when the baggie containing cocaine was in it. That, without more, sufficed to support the requisite finding of bare possession of the cocaine base.

There was also sufficient evidence to support a finding that her possession, whether actual or only constructive, was with the requisite knowledge that what she possessed was crack cocaine. Moss contends that where there is no more evidence than that one took delivery of a package which turned out to contain an illegal drug, it does not suffice to establish the requisite knowledge. That may be an accurate statement of legal principle, see, e.g., Samad, 754 F.2d at 1096 (evidence insufficient under such circumstances), but it is not an accurate statement of the evidence in this case. Here, the evidence indisputably showed that the package was addressed to Moss; that she accepted delivery as the intended addressee; that within a period of a few minutes she either directly participated in its opening or was present while it was being opened; and that she either participated in the disposition of its illegal contents to avoid their detection by police or was present during their hurried disposition. Finally, there was the evidence introduced without objection at the combined suppression-motion hearing/bench trial that Moss was expecting exactly the shipment of cocaine that she received and accepted. All this considered, the evidence was sufficient to support the requisite finding that her possession was "knowing."

IV

Moss next challenges the sufficiency of the evidence to convict her of conspiracy to possess cocaine base with intent to distribute it in violation of 21 U.S.C. § 846.

To convict of this offense, the evidence must be sufficient to support findings (1) that the conspiracy as charged did exist; (2) that the defendant knew of its existence; and (3) that the defendant voluntarily became a part of it. United States v. Bell, 954 F.2d 232, 236 (4th Cir. 1992). The evidence clearly sufficed for that purpose here.

The indictment charged that Moss conspired with Travis Nocentelli and "other persons known and unknown" to possess cocaine base with

9

intent to distribute it. There was evidence before the court that information had been received by both the security officers at Moss's apartment and by city police officers that a shipment of cocaine base would be sent from Texas for delivery by UPS to Moss and her live-in companion Nocentelli at Moss's apartment; that just such a shipment by suitcase was attempted by UPS and, after interception, was completed in a controlled-delivery to Moss's apartment, where Moss signed for and received it as addressee; that the suitcase then contained approximately an ounce of bagged cocaine base out of the six originally included; that at the time of its delivery, Moss, Nocentelli, Moss's brother and another person were present in Moss's apartment; that the suitcase was almost immediately opened by some one or more of them and the cocaine base almost immediately disposed of by one or more of them in order to avoid detection by law enforcement officers then forcing entry into the apartment.

This evidence, though largely circumstantial, see United States v. Guinta, 925 F.2d 758, 764 (4th Cir. 1991) (ordinary means of proof), easily suffices to support findings that a conspiracy existed under which approximately six ounces of cocaine base would be sent by persons in Texas to Moss and Nocentelli in Virginia for distribution by the latter two and perhaps others. In sufficing for that purpose, it also necessarily sufficed to support findings that Moss knew of that conspiracy, was indeed one of its principals, and voluntarily participated in efforts to carry out its purpose.

V

Moss challenges the district court's calculation of the amount of cocaine base attributable to her in connection with her conspiracy conviction. Specifically, she contends that the evidence before the court was insufficient to support its attribution of an amount that included the missing cocaine base contained in the baggie left in the suitcase for the controlled delivery. That particular cocaine base, she contends, was never weighed or qualitatively analyzed before its delivery, nor recovered thereafter. We disagree.

Drug quantities for sentencing purposes need only be proven by a preponderance of the evidence, and we review the determination made under the clearly erroneous standard, see United States v. Goff,

10

907 F.2d 1441, 1444 (4th Cir. 1990). In making the determination, total weight may properly be inferred by extrapolation from representative samples. United States v. Uwaeme, 975 F.2d 1016, (4th Cir. 1992). Here the district court proceeded on that basis in reaching its finding of the total amount properly attributable to Moss. The evidence established that 138.7 grams of suspected cocaine in five baggies were retained and analyzed following their discovery in the UPS private search, and was revealed to be cocaine base. From these circumstances, the district court, adopting the presentence report's recommendation, inferred that the unrecovered baggie contained a comparable amount of cocaine base to those amounts contained in each of the retained baggies, and on this basis determined the total amount properly attributable to Moss. This factual finding cannot be declared clearly erroneous.

VI

Moss claims that the district court erred in refusing to assign her a minimal or minor role in the offense in setting her sentence on the conspiracy count.

The burden was on Moss to demonstrate entitlement to such a role adjustment under U.S.S.G. § 3B.1.2, United States v. Campbell, 935 F.2d 39, 46 (4th Cir. 1991), and the district court did not err in declining to find that she had carried that burden here. The evidence upon which she was found guilty plainly identified her as a principal rather than a minor participant in the conspiracy for which she was convicted. It was she to whom the shipment of cocaine base was addressed; it was to her leased premises that it was delivered; it was she who accepted delivery; and it was she who was found in closest proximity to the opened suitcase from which the cocaine base had been removed within a few minutes after her receipt.

VII

Moss's final claim is that the district court erred in refusing to apply 18 U.S.C. § 3553(f) under which a court may, under certain conditions, impose a sentence less than that provided by any statutory mandatory minimum. See also U.S.S.G. § 5C1.2. This provision, however, does not apply when the guidelines themselves require a

11

sentence greater than the relevant statutory minimum. Moss concedes that, but claims that she would qualify if the district court had not erroneously computed the amount of cocaine base attributable to her in fixing her sentence on the conspiracy count. Because we have found no error in that computation, this claim fails.

AFFIRMED

12