**UNITED STATES of America, Plaintiff,**

v.

**Lamont O. SMITH, Defendant.**

**No. 4:01CR3063.**

United States District Court, D. Nebraska.

Nov. 13, 2001.

David W. Stempson, Assistant United States Attorney, Lincoln, NE, for plaintiff.

John C. Vanderslice, Federal Public Defender's Office, Lincoln, NE, for defendant.

## MEMORANDUM AND ORDER

KOPF, District Judge.

This matter is before the court on the Magistrate Judge's Recommendation (filing 26) that Defendant's motion to suppress (filing 14) be denied and the objec-

tions to the Recommendation (filing 27), filed as allowed by 28 U.S.C. § 636(b)(1)(C) and NELR 72.4.

I have conducted, pursuant to 28 U.S.C. § 636(b)(1) and NELR 72.4, a de novo review of the Recommendation. Inasmuch as Judge Piester has fully, carefully, and correctly applied the law to the facts, I need only state that the Recommendation should be adopted, Defendant's objections to the Recommendation should be denied, and Defendant's motion to suppress should be denied.

Accordingly,

IT IS ORDERED:

1. The Magistrate Judge's Recommendation (filing 26) is adopted;

2. The defendant's objections to the Recommendation (filing 27) are denied;

3. The defendant's motion to suppress (filing 14) is denied; and

4. The Clerk of Court shall provide a copy of this Memorandum and Order to the assigned Magistrate Judge.

## REPORT AND RECOMMENDATION

PIESTER, United States Magistrate Judge.

The motion to suppress filed by defendant Lamont Smith, filing 14, was heard on September 25, 2001. In this motion, the defendant seeks to suppress all evidence obtained as a result of the search of a Federal Express package on April 13, 2001 and again on April 16, 2001.[1] The defendant alleges that the Federal Express package which listed the defendant as the sender was unlawfully intercepted and removed from the regular stream of Federal Express Mail and that defendant's Fourth Amendment rights were violated by the unlawful search of this package.

On April 13, 2001, Detective Julian Catano and Officer Melanie Newenham of the City of Hawthorne, California police department were monitoring and investigating packages to be shipped by the Federal Express facility in Hawthorne. Their presence at this facility was at the request of Federal Express, which wanted assistance in stopping the use of its business for shipping illegal drugs from California, a drug source state, to destinations within the United States. At the request of Federal Express, law enforcement agents had been present at this shipping facility on a weekly basis for at least two years to assist the company in its drug interdiction efforts.

The Hawthorne Federal Express facility is a large shipping facility which receives parcels for shipment from many locations in the Los Angeles area, sorts those packages and places them on trucks for transportation to and immediate shipment by an air carrier destined for the location of the addressee. In addition to a front counter area where walk-in packages are accepted for shipment, and a "hold room" behind it, the facility has a large warehouse area that houses over 100 Federal Express trucks and two large conveyor belts. The packages arriving by truck to the facility are placed on a conveyor belt for sorting and loading onto trucks appropriate for the destination of the shipment. On April 13, Officer Newenham was posted at the conveyor belt to observe incoming packages. Officer Catano was located in the hold room behind the front counter.

Late Friday afternoon on April 13, Officer Newenham observed on the conveyor belt a Sony 900 mHz cordless telephone box with a handwritten handbill and marked for Saturday delivery. As an officer with significant training in narcotics

---

1. No evidence has been adduced regarding any search of the package on April 16, 2001. Therefore, any Fourth Amendment claim regarding this search has not been considered.

detection, these factors aroused her suspicion. Boxes for electronic shipments are commonly used for drug transport and in this case, the item ostensibly being shipped in the Sony box was not unique. It was a phone that could be purchased anywhere in the United States, including Nebraska, with a value of only approximately $60.00. The shipping price, including the $10.00 extra charge for Saturday delivery, was $35.00, more than half the cost of the phone. Saturday delivery is often utilized by those shipping drugs to assure that the package is not placed in a warehouse awaiting shipment which, in turn, increases the likelihood that it will be noticed and arouse suspicion.

According to Catano and Newenham, a high percentage of shipments used for drug delivery or to convey drug payments have handwritten handbills. These handbills indicate that the shipment is not from a company, which usually has pre-printed shipping forms, to a purchaser or another company, but rather from individual to individual. Narcotics dealers rarely ship from or to a company but instead, the shipments are addressed to the sender at a different address or to another individual. On the defendant's Federal Express handbill, the first digits of the sender address and the first digits of the recipient address were scratched out and altered, which is also frequently seen in drug-related shipments. In addition, senders will usually know their own address.

Although in and of themselves, the factors observed by the officer concerning this package were not illegal, in combination, and for the reasons previously discussed, they matched characteristics Officer Newenham recognized as consistent with packages used for the shipment of drugs. She presented the package to Detective Catano, who is also highly trained in narcotics interdiction and the use of canines for drug detection. He likewise

believed it appeared suspicious and returned it to Officer Newenham while he retrieved "Bailey," a canine trained to smell illegal drugs and indicate their presence.

Bailey was first directed to a search area with several packages that did not contain any illegal narcotics. Bailey did not alert to any of these packages and was removed from the area. Then Officer Newenham delivered the defendant's package to detective Catano who added it to the packages in the search area. Bailey was again directed to area and this time "alerted" to the defendant's package.

Detective Catano took the package to a Federal Express manager on duty, Lee Edwards and advised her of the dog alert. He did not ask her to open the package and when Ms. Edwards asked if she should open it, Detective Catano told her that if she wanted to open it, she could. There was sufficient time to obtain a warrant and no exigent circumstances existed. However, Ms. Edwards chose to open the package with a box cutter and exposed, in the plain view of Detective Catano, two yellow children's boots containing a white substance wrapped in tape.

Detective Catano and Officer Newenham took the package and its contents to the police station, photographed the contents and removed a small amount of the white substance which appeared to them to be crack cocaine. The package was re-taped and returned to Federal Express before the Friday shipping deadline of 6:45 p.m. Officer Newenham contacted the Lincoln police department to notify it that the package was being sent for controlled delivery in Lincoln, Nebraska.

Defendant asserts that his Fourth Amendment rights were violated by the unconstitutional detention, seizure and search of his Federal Express package. He claims that no reasonable suspicion

justified detention of the package, no probable cause existed to seize and search the package, and even if such probable cause existed, the warrantless search was unconstitutional.

 "Letters and other sealed packages are in the general class of effects in which the public at large has a legitimate expectation of privacy; warrantless searches of such effects are presumptively unreasonable." *United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984); *United States v. Sundby,* 186 F.3d 873, 875 (8th Cir.1999) Individuals have a Fourth Amendment right to be free from unreasonable searches and seizures of items placed in the mail or with private delivery services. Law enforcement authorities must have a reasonable suspicion based on articulable, objective facts that a package contains contraband before detaining it without a warrant. *United States v. Sundby,* 186 F.3d 873, 875 (8th Cir.1999); *United States v. Quiroz,* 57 F.Supp.2d 805, 813 (D.Minn.1999) A sealed package entrusted to a private parcel service is unquestionably an effect within the meaning of the Fourth Amendment. *United States v. Jacobsen,* 466 U.S. at 114, 104 S.Ct. at 1657. Where the government lacks reasonable suspicion that a package contains drugs, detention of the package for a dog sniff violates the defendant's Fourth Amendment rights and any evidence found as a result of this violation must be suppressed. *United States v. Johnson,* 171 F.3d 601, 603 (8th Cir.1999)

 When the observations made by law enforcement officers lead them to reasonably believe that a package contains narcotics, the principles of *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and its progeny permit the officer to detain the package briefly to investigate the circumstances that aroused suspicion. *United States v. Place,* 462 U.S. 696, 706, 103 S.Ct. 2637, 2644, 77 L.Ed.2d 110 (1983). The temporary detention of mail for investigative purposes is not an unreasonable seizure when authorities have a reasonable suspicion of criminal activity. *United States v. Van Leeuwen,* 397 U.S. 249, 250, 90 S.Ct. 1029, 1031, 25 L.Ed.2d 282 (1970). Exposing the package to a trained canine to ascertain the presence of narcotics is not a search within the meaning of the Fourth Amendment and probable cause to search need not exist. *Id.*

 Reasonable suspicion sufficient to detain a mail package exists when, based on the totality of the circumstances, an officer possesses a "particularized and objective basis" for suspecting that the package contains contraband, that is, more than an "inchoate and unparticularized suspicion or 'hunch.'" *United States v. Johnson,* 171 F.3d at 603–04. Conduct which would be wholly innocent to the untrained observer might acquire significance when viewed by an agent who is familiar with the practices of drug traffickers and the methods they use to avoid detection. *United States v. Wallraff,* 705 F.2d 980, 988 (8th Cir.1983) Although officers are permitted to draw "inferences and deductions that might well elude an untrained person," and these factors may become part of the Express Mail/Narcotics profile developed by law enforcement, when relying on a "drug profile" to find reasonable suspicion, "the Fourth Amendment requires an officer to explain why the officer's knowledge of particular criminal practices gives special significance to the apparently innocent facts observed." *United States v. Johnson,* 171 F.3d at 604.

 Detective Catano and Officer Newenham both testified at length regarding the drug profile factors applicable to defendant's Federal Express package. They further explained why these factors were included in the profile and why, when considered in combination, they cause

trained law enforcement officers to reasonably suspect that contraband is present in the package. "A combination of seemingly independent innocent factors may create a reasonable suspicion justifying detention for a dog sniff if the factors substantially reflect elements of a suspicious profile." *United States v. Scarborough,* 128 F.3d 1373, 1378 (10th Cir.1997) (evidence of drug profile sufficient where package had following characteristics: handwritten label; transport from individual to an individual; origin from narcotics source state; bore no return zip code; misspelled return address street; correction in the city portion of the return address; nonexistent return address street number); *United States v. Lux,* 905 F.2d 1379, 1382 (10th Cir.1990) (package meeting three factors from postal service's "drug package profile" gives authorities sufficient reasonable suspicion to subject package to drug detection dog).

The defendant's package appeared to contain a common and inexpensive telephone available throughout the United States. Despite its relatively low value and equal availability in Nebraska, the package was sent by an individual and was to be delivered overnight, with the more costly Saturday delivery, to an individual. The cost of the shipping was paid in cash. The handbill was handwritten with corrections made to both the return and recipient addresses. While each of these facts considered independently are wholly innocent, when the totality of the circumstances are considered from the vantage point of the officers' background and experience in narcotics interdiction, these facts were sufficient to support a finding of reasonable suspicion to detain defendant's Federal Express package for further investigation.

■ The investigation of defendant's Federal Express package included the use of a narcotic-trained police dog, which "alerted" the officers to the presence of illegal drugs in the package. Both the dog, Bailey, and its handler, Detective Catano were highly trained in canine detection for the presence of illegal drugs. Based on this training and experience in the field, I find that Bailey is reliable in detecting drugs by scent. Where the dog is shown to be reliable, a dog's positive indication alone is enough to establish probable cause to believe that a package contains a controlled substance. *United States v. Sundby,* 186 F.3d at 875.

■ Absent exigent circumstances, even when government agents have probable cause to lawfully seize a package delivered for shipment to a private freight carrier, the Fourth Amendment requires that they obtain a warrant before examining the contents of such a package. *United States v. Jacobsen,* 466 U.S. at 114, 104 S.Ct. at 1657. However, "the fact that agents of the private carrier independently opened the package and made an examination that might have been impermissible for a government agent cannot render otherwise reasonable official conduct unreasonable. The reasonableness of an official invasion of the citizen's privacy must be appraised on the basis of the facts as they existed at the time that invasion occurred." *Id.* at 114–15, 104 S.Ct. at 1657. The Fourth Amendment proscribes "only governmental action; it is wholly inapplicable 'to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official.'" *Id.*

■ A private citizen's acts cannot constitute a search or seizure within the context of the Fourth Amendment unless the citizen is acting as an agent or instrument of the government. In order for a private search to be considered action by the government, the private actor must be

regarded as having acted as an instrument or agent of the state. *Coolidge v. New Hampshire*, 403 U.S. 443, 487, 91 S.Ct. 2022, 2049, 29 L.Ed.2d 564 (1971). The determination of this agency must be made on a case-by-case basis and in light of all of the circumstances. It is the defendant's burden to establish by a preponderance of the evidence that a private party acted as a government instrument or agent. *U.S. v. Feffer*, 831 F.2d 734, 739 (7th Cir.1987). See also, *United States v. Reed*, 15 F.3d 928, 931 (9th Cir.1994) ("The defendant has the burden of showing government action.").

■■■■■ In determining whether a private citizen is an agent of the government, the two critical factors are (1)the government's knowledge of and acquiescence in the search, and (2) the intent of the party performing the search. *United States v. Parker*, 32 F.3d 395, 398 (8th Cir.1994). To determine the intent of the private party performing the search, the court must determine whether the party did so for the purpose of assisting law enforcement officials or, in the alternative, to further its own ends. *United States v. Malbrough*, 922 F.2d 458, 462 (8th Cir.1990) (citing *United States v. Miller*, 688 F.2d 652, 657 (9th Cir.1982)). The court also considers whether the individual who performed the search did so at the request of the government and whether the government offered a reward. *Id.* (See also, *Feffer*, 831 F.2d at 739; *United States v. David*, 943 F.Supp. 1403, 1409 (E.D.Va. 1996)).

■■■■■ The government's knowledge of the private person's conduct is critical but it is not enough, standing alone, to establish the requisite agency. *United States v. Kinney*, 953 F.2d 863, 865 (4th Cir.1992) Further, government's failure to prevent a private person from conducting a search that it could not itself lawfully conduct does not, standing alone, make the private person's conduct that of the government. *United States v. David*, 943 F.Supp. at 1410. Where the shipper is advised by the government that it suspects a package's contents are illegal, but leaves the opening of the package to the discretion of the shipper, the discretionary action by the shipper in opening the package is not a government action and is not protected by the Fourth Amendment. *Gold v. United States*, 378 F.2d 588 (9th Cir.1967) (where government agents informed airlines manager of their suspicions regarding shipment but did not request that package be opened, action of airline's manager in opening package did not constitute a federal search); *United States v. Jennings*, 653 F.2d 107, 110 (4th Cir.1981) (communicating to American Airlines its suspicion that a package contained drugs and the presence of the DEA agents during the airline's search of the package does not make the airline's decision to perform the search a government rather than a private action); *Feffer*, 831 F.2d at 740 (agent neither discouraged or encouraged employee from disclosing her employer's tax documents, and employee with her own private motivations to do so was not a government actor).

"[I]t is no part of the policy underlying the Fourth and Fourteenth Amendments to discourage citizens from aiding to the utmost of their ability in the apprehension of criminals." *Coolidge v. New Hampshire*, 403 U.S. 443, 488, 91 S.Ct. 2022, 2049, 29 L.Ed.2d 564 (1971). While there are undoubtedly forces encouraging a private citizen to cooperate in the presence of police, including "the simple but often powerful convention of openness and honesty, ..., there is nothing constitutionally suspect in the existence, without more, of these incentives to full disclosure or active cooperation with the police." *Id.*

■ "Common carriers have a common law right to inspect packages they accept for shipment, based on their duty to refrain from carrying contraband." *Illinois v. Andreas*, 463 U.S. 765, 769 n. 1, 103 S.Ct. 3319, 3323 n. 1, 77 L.Ed.2d 1003 (1983) (citing *United States v. Pryba*, 502 F.2d 391, 399–400 (C.A.D.C.1974)).

> Common carriers have the right to decline shipment of packages proffered in circumstances indicating contents of a suspicious, indeed of a possibly dangerous nature. Justification for the carrier's refusal is to be found in the exigencies of safeguarding life and property, and undeniably the frustration of criminality is likewise a worthy carrier endeavor. The imperatives of either objective may warrant inquiry by the carrier as to the contents of a parcel tendered for shipment; they may suffice, too, to justify a reasonable inspection of the parcel to fulfill that purpose.

*United States v. Jennings*, 653 F.2d at 110. That the carrier may have the dual motive of serving its own interests as well as the governments does not convert a private act into a government act. Where a private overnight shipper of packages inspects a package to assure it is not being used as a means to deliver contraband, even if done in the presence or with the acquiescence of the government, the search is private though the government's goal of stopping the flow of illegal drugs is served as well. *United States v. David*, 943 F.Supp. at 1412–13 (UPS had a duty to refrain from transporting illegal drugs and its inspection of package with the knowledge of but not at the request of the government is a private and not a government action).

■ The presence of Detective Catano and Officer Newenham at Federal Express on April 13, 2001 was at the request of Federal Express. As an overnight shipping company, it is justifiably concerned that in performing its duty to timely deliver packages, it also fulfills its duty to refrain from delivering illegal contraband. To that end, it routinely requested and received the assistance of the City of Hawthorne police department. While Detective Catano advised Lee Edwards of Federal Express that the package was suspicious, he did not ask her to open it but left that decision to her. There is no evidence that he directed Ms. Edwards to inspect the package, whether overtly or by subtle methods. Her choice on behalf of Federal Express to inspect a package and assure that her company was not being used as a vehicle in the drug trade is a private act and not a government search subject to the Fourth Amendment.

Once the package was opened by Ms. Edwards, its contents were in "plain view." The actions of Detective Catano and Officer Newenham in removing the contents, performing field testing, securing a small amount of the contraband for evidence and sending the package on for a timely and controlled delivery did not violate the Fourth Amendment. *United States v. Jacobsen*, 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984).[2] "The removal of the plastic bags from the [package] and the agent's visual inspection of their contents enabled the agent to learn nothing that had not previously been learned during the private search. It infringed no legitimate expectation of privacy and hence was not a 'search' within the meaning of the Fourth Amendment." Id. at 120, 104 S.Ct. at

**2.** The defendant has argued that under the Eighth Circuit's opinion in *United States v. Jacobsen*, 683 F.2d 296 (8th Cir.1982), a warrant was necessary for further inspection following the private search of defendant's package by Federal Express. The relevant principles of law in the Eighth Circuit's opinion were reversed by the Supreme court in *United States v. Jacobsen*, 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984).

1660. "The agent's viewing of what a private party had freely made available for his inspection [does] not violate the Fourth Amendment." *Id.* at 119, 104 S.Ct. at 1660.

While the agents' assertion of dominion and control over the package and its contents did constitute a "seizure," that seizure was not unreasonable. The fact that, prior to the field test, respondents' privacy interest in the contents of the package had been largely compromised [by the inspection by Federal Express], is highly relevant to the reasonableness of the agents' conduct in this respect. The agents had already learned a great deal about the contents of the package from the Federal Express employees, all of which was consistent with what they could see.... Such containers may be seized, at least temporarily, without a warrant. Accordingly, since it was apparent that the [package] contained contraband and little else, this warrantless seizure was reasonable.

Id. at 120PIESTER–22, 104 S.Ct. at 1660–61.

■ It is prudent and constitutionally permissible to detain a suspicious package for a limited period of time to investigate its contents instead of trying to locate a mailed package en route and enlisting the help of distant federal officials in serving warrants for their inspection. *United States v. Van Leeuwen,* 397 U.S. 249, 253, 90 S.Ct. 1029, 1033, 25 L.Ed.2d 282 (1970). Investigating the package contents using a chemical test that merely discloses whether or not a particular substance is an illegal drug does not compromise any legitimate interest in privacy. A field test can only disclose one fact previously unknown to law enforcement—the identity of the contraband in the package. Governmental conduct that can reveal only whether a substance is an illegal drug and if so, the type, and no other arguably "private" fact, compromises no legitimate interest in pri-

vacy. *Id.* at 122–23, 104 S.Ct at 1661–62. The testing of a sample of the contraband does affect the defendant's possessory interests protected by the Fourth Amendment, since by destroying a quantity of the powder, it converted what had been only a temporary deprivation into a permanent deprivation. However, the law enforcement interests justifying this procedure are substantial given the suspicious nature of the material in the package and the virtual certainty that it was illegal contraband. *Id.* at 124–25, 104 S.Ct. at 1662. "[S]ince the property had already been lawfully detained, the 'seizure' could, at most, have only a *de minimus* impact on any protected property interest." *Id.* at 125, 104 S.Ct. at 1663.

■ The suspicious nature of the contents in defendant's Federal Express package were in the plain view of Detective Catano when Federal Express opened the package. The package was then detained by law enforcement for the small period of time needed to test the contents and confirm the presence of illegal drugs secure, with only a small amount of the contraband removed for evidence. "In sum, the [law enforcement] agents did not infringe any constitutionally protected privacy interest that had not already been frustrated as the result of private conduct. To the extent that a protected possessory interest was infringed, the infringement was *de minimis* and constitutionally reasonable." *Id.* at 126, 104 S.Ct. at 1663.

IT THEREFORE HEREBY IS RECOMMENDED to the Hon. Richard g. Kopf, United States Senior District Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), that the defendant's motion to suppress be denied in all respects.

The parties are notified that a failure to object to this recommendation in accordance with the local rules of practice may be held to be a waiver of any right to

appeal the district judge's adoption of this recommendation.

IT IS FURTHER HEREBY ORDERED that trial is set for 9:00 a.m. on November 19, 2001, for a duration of four trial days before the Honorable Richard G. Kopf. Jury selection will be at the commencement of trial.