**Dennis FISHER, Appellant,**

v.

**Crispus NIX, Warden Iowa State Penitentiary, Appellee.**

No. 90–1254.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 12, 1990.

Decided Dec. 6, 1990.

Lorraine K. Snead, Cedar Rapids, Iowa, for appellant.

Thomas D. McGrane, Des Moines, Iowa, for appellee.

Before LAY, Chief Judge, BRIGHT, Senior Circuit Judge, and VAN SICKLE,[*] Senior District Judge.

PER CURIAM.

Dennis Fisher, a state prisoner, was convicted in Iowa state court of first degree murder in the 1975 shooting death of Howard Miller. He was sentenced to life imprisonment and the Supreme Court of Iowa affirmed his conviction. *State v. Fisher*, 279 N.W.2d 265 (Iowa 1979). Fisher now appeals from the federal district court's [**] denial of his petition for a writ of habeas corpus, alleging as grounds for reversal that he did not waive his right to counsel during interrogation and that his right to due process was violated by the prosecutor's improper final argument and by the prosecutor's failure to correct a prosecution witness' misleading testimony. We affirm.

BACKGROUND

In February, 1975, Dennis Fisher and Myra Miller informed Sheriff Bert Elledge that Myra Miller's husband, Howard Miller, was missing. After conducting a preliminary investigation, Sheriff Elledge began to suspect that Fisher and Myra Miller were connected with Howard Miller's disappearance. On April 23, 1975, Fisher and Myra Miller were arrested in Missouri when they attempted to cash a check made payable to Myra and Howard Miller. The check was proceeds from a sale of equipment and other assets from the Iowa farm belonging to the Millers. Fisher was given

---

[*] The HONORABLE BRUCE M. VAN SICKLE, Senior United States District Judge for the District of North Dakota, sitting by designation.

[**] The Honorable David R. Hansen, United States District Judge for the Northern District of Iowa.

*Miranda* warnings and taken into custody. Fisher denied signing Howard Miller's name on the check and refused to answer questions regarding Howard Miller's whereabouts. Later that evening, when Fisher was informed that Myra Miller had made a written statement implicating him in the death of Howard Miller, Fisher confessed to Missouri police that he shot Howard Miller and disclosed the location of the body.

Both Miller and Fisher were indicted on open charges for murder. The State subsequently agreed to dismiss the murder indictment against Miller if she testified against Fisher at trial and plead guilty to a conspiracy charge of obstructing justice. Iowa Code § 719.1 (1975). The county attorney sent a letter to Miller's attorney that outlined the terms of the plea bargain agreement. In this letter, the county attorney stated that "in the event of any reversal in the Iowa Supreme Court that the obligation of Myra Miller to testify at any future trial would also be incumbent upon her as a result of this understanding." In accordance with the agreement, Miller testified at both of Fisher's trials that Fisher murdered Howard Miller. After the first trial, she plead guilty to the conspiracy charge.

At Fisher's second trial, Fisher's attorney elicited the following testimony from Miller on cross-examination:

> Q. Well, Myra, you made a deal ultimately didn't you, with [the county attorney]?
>
> A. I don't believe that was until after going to court.
>
> Q. Part of the deal was that you would testify in any proceeding against Dennis Fisher, and you would get your murder charge dropped; isn't that a fact?
>
> A. I'm not quite sure how to answer that. I believe so.

Tr. at 542.

## DISCUSSION

*Misleading Testimony by Myra Miller*

In *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972), the Supreme Court held that a criminal defendant's due process rights may be violated if the prosecutor fails to correct misstatements by a witness concerning arrangements with the government in exchange for the witness' testimony. The *Giglio* Court concluded that "a new trial is required if 'the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury.'" *Id.* (quoting *Napue v. Illinois*, 360 U.S. 264, 271, 79 S.Ct. 1173, 1178, 3 L.Ed.2d 1217 (1959)). The court reasoned that the nondisclosure of evidence affects a witness' credibility, which in turn may determine a defendant's guilt or innocence. *Id.*

Fisher argues that his right to due process was violated when the prosecutor failed to correct Miller's false and misleading testimony concerning her plea bargain with the State. Miller testified she did not believe she had made a deal with the State "until after going to court." Tr. at 542. In addition, she stated she was "not quite sure how to answer" but that she *believed* the deal was that the murder charge against her would be dropped in exchange for her testimony. Tr. at 542. Fisher claims this testimony affected Miller's credibility. He maintains the jury may have implied from her testimony that she was a relatively uninvolved witness who was objectively reporting the events that transpired when in fact she was an interested witness who was testifying to avoid being charged with murder. Fisher concludes he is entitled to a new trial because there was a reasonable likelihood that the jury's judgment was affected by Miller's misleading testimony.

Although we find Miller's testimony misleading with respect to the nature of the plea agreement, we agree with the district court that the jury's judgment would not have been different even if the prosecutor had corrected Miller's statements at trial. The jury was able to adequately assess Miller's credibility because it was aware she had entered into an agreement with the government. In addition, there was sufficient evidence to convict Fisher even with-

out her testimony and therefore any error was harmless.

*Improper Closing Argument*

 Fisher argues that the prosecutor violated his due process rights by making false and misleading statements during closing argument at his second trial. The prosecutor stated that "there is nothing in ... the Record that this woman was let off, as was suggested here, on a murder case in exchange for her testimony." Tr. at 1036. In addition, he asked the jury: "what can [Miller] gain, actually, by doing anything other than to tell the truth at this time?" Tr. at 971. Fisher contends these false statements bolstered Miller's credibility and therefore affected the judgment of the jury.

Although we agree with the district court that the prosecutor's closing argument was misleading, we conclude that the error was harmless. There was not a "reasonable likelihood" that the jury's judgment would have been different if the prosecutor had not made the misleading statements. As stated earlier, the jury was able to adequately assess Miller's credibility because it was aware she had entered into an agreement with the State. In addition, there was ample evidence to convict Fisher of murder even without Miller's testimony.

*Waiver of Counsel*

 It is undisputed that Fisher did not consult with an attorney at any time during the interrogation by the Missouri police officers. Fisher contends he repeatedly requested counsel during questioning and never waived his right to have counsel present during his interrogation. In addition, he offers the results from his polygraph examination in support of his credibility.

The Iowa Supreme Court concluded, however, that Fisher knowingly and voluntarily waived his right to counsel and did not request counsel during interrogation. *Fisher*, 279 N.W.2d at 267. The district court examined the state court factual findings in light of the results from Fisher's polygraph examination and found them fairly supported by the record. We also reviewed the record and are satisfied the district court's conclusion was not clearly erroneous. *See United States v. Ingram*, 839 F.2d 1327, 1329 (8th Cir.1988).

The judgment of the district court is affirmed.