Salem

DAVID WAYNE MILLS

v.

COMMONWEALTH OF VIRGINIA

No. 1497-90-3

Decided May 19, 1992

460

Counsel

Walter E. Rivers; Lonnie L. Kern, for appellant.

Michael T. Judge (Mary Sue Terry, Attorney General; Robert Q. Harris, Assistant Attorney General, on brief), for appellee.

Opinion

COLEMAN, J.—David Wayne Mills was convicted in a jury trial of first-degree murder in violation of Code § 18.2-31; attempted burglary in violation of Code §§ 18.2-91 and 18.2-26; and use of a firearm in the commission of a felony, as a principal in the second

degree, in violation of Code § 18.2-53.1. Mills challenges the convictions on grounds that the trial court erred in (1) failing to suppress evidence discovered during a warrantless search by a private citizen who was acting as an agent of the government and (2) failing to suppress incriminating statements he made after law enforcement officers disregarded his request for the assistance of counsel and continued to interrogate him while he was in custody.

The trial judge ruled that the private citizen was not an agent of the government and that Mills did not request counsel. Those findings are supported by credible evidence. Thus, we reject Mills's contentions and affirm his convictions.   .

On November 4, 1988, John Lee Martin, an on-duty Lee County, Virginia deputy sheriff, was shot. Before Martin died three days later, he described his assailant as a male in his early twenties, with a mustache and black hair, who was driving an automobile with Illinois dealer tags displayed in the rear window.

The family of David Wayne Mills had moved to Effingham County, Illinois in October 1988. Soon thereafter, they contacted Floyd Barlow, who was in the home security business, and hired him to repair a burglary alarm system he had installed in the home and to install smoke detectors.

On December 27, 1988, while working in the Mills' home, Barlow discovered in the ceiling joists in the basement where he was installing wiring for a smoke detector a box of .44 calibre ammunition, a ski mask, a money bag from a bank in Middlesboro, Kentucky, and an Illinois automobile dealer's tag. While working in David Mills's bedroom, he also observed a .38 calibre handgun in an open top dresser drawer. Later that day, Barlow reported to Sheriff Art Kinkelaar of the Effingham County Sheriff's Department what he had seen and provided the sheriff with a sketch of the Mills's home and the location of the items he observed.

Barlow had known the sheriff for over thirty years. At one time, he had worked as a town police officer in the same county where Kinkelaar had been a deputy sheriff. After leaving law enforcement, Barlow had been an informant for the sheriff, providing information to him which had led to criminal convictions.

Sheriff Kinkelaar contacted law enforcement authorities in Middlesboro, Kentucky. Based on the information Kinkelaar relayed to them, they referred him to the authorities in Lee County, Virginia. From his contact with the Lee County Sheriff's Department, Sheriff Kinkelaar learned of the facts surrounding Deputy Martin's death, and he regarded Mills as a suspect in that homicide.

On January 4, 1989, Sheriff Kinkelaar again spoke with Floyd Barlow. Kinkelaar asked Barlow "if he was going to go back in the [Mills's] residence, if he would observe and see if [the items he saw initially] were still there." Barlow informed the sheriff that he had not completed his job at the Mills's home.

On January 5, 1989, Barlow reentered the Mills's home to complete his work. He was able to observe the items in the ceiling joists during the course of his work. Barlow related this information to the sheriff, and Kinkelaar obtained a search warrant for the Mills's home based, in part, on Barlow's information. Sheriff Kinkelaar executed the search warrant and seized the items that Barlow had seen. During the search, David Wayne Mills arrived home and was arrested for possession of stolen property.

At approximately 8:00 p.m. on January 5, 1989, Mills was interrogated in Sheriff Kinkelaar's office by the sheriff, Ed Hoopengarner of the Illinois State Police, Ed Hanko of the FBI, and Roger Hammons and Allen Schaeffer of the Lee County Sheriff's Department. Trooper Hoopengarner advised Mills of his *Miranda* rights. At 8:10 p.m., Mills executed a form acknowledging that he understood his rights and that he waived his right to counsel and his right to remain silent. Mills then gave a statement in which he admitted to having been involved in the shooting death of Officer Martin; however, he implicated another person as having fired the shots. Mills signed a second form waiving his *Miranda* rights at 9:43 p.m., after which he executed a written statement admitting his role in the death of Deputy Martin. He completed his written statement at 11:16 p.m. The next day, January 6, 1989, Mills executed a third written waiver of his *Miranda* rights, after which he again confessed in a tape-recorded interview to his role in the murder.

Mills was indicted in Lee County, Virginia for the murder of Deputy Martin, use of a firearm during the commission of a fel-

ony, and attempted burglary. Prior to trial, he moved to suppress the evidence seized from his home and his statements given to police in Effingham, Illinois. The trial court denied the motions.

Mills was convicted by jury trial of first degree murder, attempted burglary, and use of a firearm in the commission of a felony as a principal in the second degree. The trial judge sentenced Mills, in accordance with the jury's verdict, to life in the penitentiary plus twelve years.

## I.

Mills contends that the trial court erred in denying his motion to suppress the evidence seized from his parents' home because it was discovered, and its continuing presence verified for the purpose of obtaining a search warrant, during a warrantless search by Floyd Barlow, who was acting as an agent of the police. The trial court found that Barlow was not acting as an agent of the state while he was in the Mills's home. That finding is supported by credible evidence, and, therefore, we reject Mills's contention.

The Fourth Amendment acts as a constraint only upon government or state action. It was intended to be a limitation only upon governmental agencies. *Burdeau v. McDowell*, 256 U.S. 465, 475 (1921). Consequently, a private search, no matter how unreasonable, does not constitute a constitutional violation warranting the suppression of the evidence seized. *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). *See also United States v. Mehra*, 824 F.2d 297, 299 (4th Cir.), *cert. denied*, 484 U.S. 915 (1987). If, however, a private individual "must be regarded as having acted as an instrument or agent of the state" while conducting the search, the Fourth Amendment is applicable. *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 614 (1989). Whether a person acted privately or as an agent of the state is a question of fact that must be decided on the circumstances of each case. *Id.* Resolution of the agency issue "necessarily turns on the degree of the Government's participation in the private party's activities." *Id.* (citations omitted).

Some courts have adopted a two-part test for determining whether an individual was acting as an agent of the state while conducting a search: (1) whether the government knew of and acquiesced in the search, and (2) whether the search was conducted for the purpose of assisting law enforcement efforts or for the pur-

pose of furthering the private party's ends. *United States v. Feffer*, 831 F.2d 734, 739 (7th Cir. 1987); *United States v. Walther*, 652 F.2d 788, 792 (9th Cir. 1981). These criteria help focus the trial court's attention on the significance and impact of the government's involvement in a search. *State v. Buswell*, 460 N.W.2d 614, 618 (Minn. 1990). However, they should not be viewed as an exclusive list of relevant factors because trial courts must consider the extent of the government's involvement in the search, as well, in resolving the agency issue. *See Skinner*, 489 U.S. at 614. Moreover, because the agency determination is a question of fact to be resolved by the trial court, such factual determinations will be reversed on appeal only if clearly erroneous. *United States v. Koening*, 856 F.2d 843, 849 (7th Cir. 1988); *Feffer*, 831 F.2d at 739. "[I]t is the movant's burden to establish by a preponderance of the evidence that the private party acted as a government instrument or agent," in order to invoke the protection of the Fourth Amendment. *Feffer*, 831 F.2d at 739.

The evidence adduced at the suppression hearing supports the trial court's finding that Barlow was not acting as an agent of the state when he first entered the Mills's home on December 27, 1988, to repair and install the alarm systems. Barlow's entry into the Mills's home was an entry authorized by the owner for the sole purpose of performing work. Barlow had had no prior contact with the sheriff regarding David Mills or the Mills's home. Mills presented no evidence that anyone with the Effingham County Sheriff's Department knew of or acquiesced in or was in involved in any way in Barlow's search of the Mills's home on December 27, 1988.

Mills also contends that Barlow was an agent of the police when he reentered the Mills's home on January 5, 1989, after having reported what he observed to Sheriff Kinkelaar. Mills did not establish that the sheriff or any other member of the sheriff's department knew that Barlow would be reentering the Mills's home on January 5, 1989. When Sheriff Kinkelaar contacted Barlow after talking with Lee County authorities, he did not instruct Barlow to go back into the Mills's home, nor did he request that Barlow do so. Instead, he asked Barlow that "*if* he was going to go back into the residence," to see if the items were still there. The decision to reenter was up to Barlow. Barlow informed the sheriff that he had not completed his work, but he did not tell the

sheriff that he was going to reenter the home. Barlow did return on January 5 for the sole purpose of continuing to install the alarm system. During that time, he made no separate or independent search of any area beyond where he worked; he merely observed during the course of his work that the items were still where he had seen them. Barlow's reentry into the Mills's home to complete the installation of smoke alarms ·was legal and was authorized. The purpose of the reentry was not to search the Mills's residence. When Barlow reentered the Mills's basement where he was working and looked in the ceiling joists where he had previously observed the items, he was not doing so as an agent of the police or the state. *See Duarte v. Commonwealth*, 12 Va. App. 1023, 407 S.E.2d 41 (1991). Even if Sheriff Kinkelaar arguably knew or suspected that Barlow would be returning to the Mills's residence, Barlow's sole purpose in returning was for personal business. The fact that Barlow looked in the ceiling joists as he was performing his work did not make him an agent of the police. Barlow was in the residence to further his own personal business and not to assist law enforcement efforts. Accordingly, the evidence supports the trial court's finding that Barlow was not acting as an agent of the state. Consequently, the trial court did not err by denying Mills's motion to suppress the evidence seized from his parents' home. That evidence was initially discovered and verified by a private search.

## II.

Mills next contends that the trial court erred by denying a motion to suppress his inculpatory statements made to law enforcement officers while being interrogated at the Effingham County, Illinois police station. Mills says that the police officers did not stop questioning him after he requested the assistance of counsel.

■ The Fifth and Fourteenth Amendments provide that an accused has the right to have counsel present during a custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 474 (1966).

[W]hen an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. . . . [A]n accused . . . having expressed his desire to deal with police only

through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.

*Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981) (footnote omitted). When a defendant invokes his right to counsel, further interrogation is constitutionally permissible only if (1) the accused has knowingly and intelligently waived his right to counsel, and (2) initiates further discussions with the police. *Smith v. Illinois*, 469 U.S. 91, 95 (1984); *Oregon v. Bradshaw*, 462 U.S. 1039, 1045-46 (1983). "[T]he *Edwards* rule is invoked, and . . . custodial interrogation must cease, when the accused, having received *Miranda* warnings and having begun to respond to the questions of authorities, 'has *clearly* asserted his right to counsel.'" *Eaton v. Commonwealth*, 240 Va. 236, 253-54, 397 S.E.2d 385, 395-96 (1990) (emphasis in original) (quoting *Edwards*, 457 U.S. at 485), *cert. denied*, 112 S. Ct. 88 (1991).

At the pre-trial suppression hearing, and again at trial, when Mills renewed his motion to suppress his incriminating statements, the Commonwealth presented evidence that Mills never requested counsel during the custodial interrogation. Mills, on the other hand, testified that shortly after the questioning began and before he made any incriminatory statements, he requested counsel, but that the officers did not stop questioning him. Mills testified that he was brought from his jail cell for questioning to Sheriff Kinkelaar's office in the Effingham County Sheriff's Department at approximately 8:00 p.m. on January 5, 1989. Sheriff Kinkelaar, Ed Hoopengarner from the Illinois State Police, Ed Hanko from the FBI, and Roger Hammons and Allen Schaeffer, both from the Lee County Sheriff's Department, were present. Trooper Hoopengarner advised Mills of his *Miranda* rights. Mills initialed each individual right on a standard *Miranda* form to signify that he understood each one. At 8:10 p.m., Mills signed an express waiver of his right to counsel and his right to remain silent. He made a statement to the officers recounting his role in the shooting death of Deputy Martin. At 9:43 p.m., Mills signed another waiver of his rights, after having been given a second set of *Miranda* warnings. At this time, he gave the officers a handwritten statement recapitulating his earlier oral account. Mills completed the written statement at 11:16 p.m. Ed Hoopengarner,

Sheriff Kinkelaar, and Roger Hammons testified that Mills, at no time during the interrogation, requested counsel. Mills testified that Sheriff Kinkelaar was present when he (Mills) requested counsel. Allen Schaeffer testified that Mills, after first being read his rights, stated, "I want to confer with my attorney." Ed Hanko testified at trial that, at one point early on, Mills stated, "I don't know if I could talk about that without an attorney." On January 6, 1989, shortly after 1:00 p.m., less than twenty-four hours after his initial inculpatory statement, Mills was advised of his *Miranda* rights a third time, after which he signed a third waiver and then recounted in a tape-recorded interview his role in Deputy Martin's murder. In this interview, conducted by Roger Hammons in the presence of Allen Schaeffer, Ed Hoopengarner, and Art Kinkelaar, Mills acknowledged that he was aware that he had the right to have counsel present, that he waived this right, and that none of the officers had made any threats or promises to induce him to submit to the interview. Additionally, the following colloquy took place between Mills and Roger Hammons:

Q. David, I want to make it clear to you one more time, and I'd like for you to tell me if you have been threatened, or have we made any promises to you at any time that we have talked to you, at any of the times that we have sat down and talked to you?

A. No, sir.

Q. All this information you have supplied us with, you have given to us freely and willingly?

A. Yes, sir.

Q. And you have been told over and over that you are entitled to a lawyer, and you requested to go ahead and tell us without your lawyer being present?

A. Yes, sir.

Q. Is that true?

A. Yes, sir.

The substance of this interview was introduced as evidence at trial when the tape recording was played for the jury and trial court to hear.

■■■■ The Commonwealth bears the burden of proving by a preponderance of the evidence that the accused waived his *Miranda* rights. *Colorado v. Connelly*, 479 U.S. 157, 168 (1986). It must show that the accused "knowingly and intelligently waived the constitutional privilege against self-incrimination and the right to counsel." *Goodwin v. Commonwealth*, 3 Va. App. 249, 252, 349 S.E.2d 161, 163 (1986). Additionally, the Commonwealth must prove the voluntariness of a defendant's confession by a preponderance of the evidence. *Lego v. Twomey*, 404 U.S. 477, 489 (1972). Whether a confession is voluntary requires an independent examination of the totality of the circumstances to determine "whether the statement is the 'product of an essentially free and unconstrained choice by its maker,' or whether the maker's will 'has been overborne and his capacity for self-determination critically impaired.'" *Gray v. Commonwealth*, 233 Va. 313, 324, 356 S.E.2d 157, 163, *cert. denied*, 484 U.S. 873 (1987). In making this independent determination, however, an appellate court is "bound by the trial court's subsidiary factual findings unless those findings are plainly wrong." *Wilson v. Commonwealth*, 13 Va. App. 549, 551, 413 S.E.2d 655, 656 (1992). Conflicts in evidence present factual questions that are to be resolved by the trial court, *Wade v. Duckworth*, 626 F. Supp. 1048, 1055 (N.D. Ind. 1986), and whether an accused requested counsel is also a factual determination that will not be disturbed on appeal unless clearly erroneous, *Fisher v. Nix*, 920 F.2d 549, 552 (8th Cir. 1990); *United States v. Hagan*, 913 F.2d 1278, 1282 (7th Cir. 1990). When a trial court is acting as fact finder, it

> must evaluate the credibility of the witnesses, resolve the conflicts in their testimony and weigh the evidence as a whole. Its factual finding "is to be given the same weight by the appellate court as is accorded the finding of fact by a jury."

*Albert v. Commonwealth*, 2 Va. App. 734, 738, 347 S.E.2d 534, 536 (1986) (quoting *Witt v. Commonwealth*, 215 Va. 670, 674, 212 S.E.2d 293, 296-97 (1975) (citation omitted)). Thus, if the trial court's factual finding is supported by credible evidence, it may not be overturned on appeal. Moreover, on appeal we review the evidence in the light most favorable to the prevailing party, the Commonwealth. *Eaton*, 240 Va. at 250, 397 S.E.2d at 343.

The evidence at the suppression hearing and at trial was that on three separate occasions, Mills was advised of his right to counsel and his right to remain silent; on three separate occasions, he knowingly and voluntarily waived those rights. A conflict existed between Mills's testimony, the testimony of Allen Schaeffer and Ed Hanko which tended to corroborate Mills's contention, and the testimony of Sheriff Kinkelaar, Ed Hoopengarner and Roger Hammons as to whether Mills, in fact, requested counsel. In resolving this conflict in the evidence, the trial court had to consider the credibility of the witnesses and weigh all of the evidence. In doing so, the trial court could have reasonably discounted the credibility of Mills's testimony that he requested counsel, based on the statement Mills made during the tape-recorded interview, in which he acknowledged that he had been "told over and over [that he was] entitled to a lawyer," but that he wanted "to go ahead and tell [the officers] without [his] lawyer being present." Because the interview occurred within twenty-four hours after Mills had made his initial inculpatory statement, when the circumstances surrounding his interrogation were freshly impressed in his memory, the trial court reasonably could have concluded that the statements he made during the interview were entitled to more weight than his suppression hearing testimony, which occurred months after the events surrounding his interrogation. Based on all of the evidence, the trial court could have concluded that the Commonwealth established by a preponderance of the evidence that Mills knowingly and intelligently waived his *Miranda* rights and voluntarily confessed to his role in the shooting death of Deputy Martin. Consequently, the trial court did not err in finding that, on the conflicting evidence, Mills did not request the assistance of counsel and that he knowingly and intelligently waived his right to counsel and his right to remain silent. Accordingly, we reject Mills's contention that the trial court erred in admitting his inculpatory statements into evidence.

For the foregoing reasons, we affirm Mills's convictions.

*Affirmed.*

Koontz, C.J., and Elder, J., concurred.