COURT OF APPEALS OF VIRGINIA


Present:  Judges Willis, Elder and Bray
Argued at Richmond, Virginia


WAYNE THOMAS IMEL
                                      MEMORANDUM OPINION[*] BY
v.    Record No. 1740-00-2             JUDGE LARRY G. ELDER
                                           MAY 15, 2001
COMMONWEALTH OF VIRGINIA


           FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                   Herbert C. Gill, Jr., Judge

           Matthew P. Geary (Barbara J. Gaden, L.L.C.,
           on briefs), for appellant.

           Kathleen B. Martin, Assistant Attorney
           General (Mark L. Earley, Attorney General, on
           brief), for appellee.


     Wayne Thomas Imel (appellant) appeals from his bench trial

convictions for two counts of robbery, two counts of use of a

firearm in the commission of robbery, and one count each of

entering a bank with a weapon and possessing cocaine.  On

appeal, he contends the trial court erroneously (1) denied his

motion to suppress the cocaine, which was seized when he was

detained at a shopping mall and subjected to a pat-down search

for weapons; (2) denied his motion to suppress his statement to

police in which he admitted the bank robbery; and (3) concluded

the evidence was sufficient to sustain his convictions in light

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

of the erroneous rulings on the motions to suppress.  We hold
the weapons frisk of appellant in the shopping mall incident was
not supported by reasonable, articulable suspicion to believe
that appellant was armed and dangerous.  Thus, the denial of the
motion to suppress the cocaine was erroneous, and we reverse the
conviction for possessing cocaine and remand for further
proceedings if the Commonwealth be so advised.  However, the
evidence, viewed in the light most favorable to the
Commonwealth, supported the trial court's finding that appellant
knowingly and intelligently waived his right to counsel.  Thus,
the trial court's denial of the motion to suppress the robbery
confession was not erroneous, and we affirm the robbery and
related firearm convictions.

                                I.

     At a hearing on a defendant's motion to suppress, the
Commonwealth has the burden of proving that the challenged
behavior did not violate the defendant's constitutional rights.
See Mills v. Commonwealth, 14 Va. App. 459, 468, 418 S.E.2d 718,
722-23 (1992).  "In determining whether the Commonwealth has met
its burden, the trial court, acting as fact finder, must
evaluate the credibility of the witnesses . . . and resolve the
conflicts in their testimony . . . ."  Witt v. Commonwealth, 215
Va. 670, 674, 212 S.E.2d 293, 297 (1975).  On appeal, we view
the evidence in the light most favorable to the prevailing
party, here the Commonwealth.  Mills, 14 Va. App. at 468, 418

-

S.E.2d at 723. "[W]e are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them[,] and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc). However, we review de novo the trial court's application of defined legal standards, such as whether the police had reasonable suspicion or probable cause for a search or seizure or whether a confession was voluntary, to the particular facts of the case. See Ornelas v. United States, 517 U.S. 690, 699, 116 S. Ct. 1657, 1663, 134 L. Ed. 2d 911 (1996); Mills, 14 Va. App. at 468, 418 S.E.2d at 723.

A.

MOTION TO SUPPRESS COCAINE

"Fourth Amendment jurisprudence recognizes three categories of police-citizen confrontations: (1) consensual encounters, (2) brief, minimally intrusive investigatory detentions, based upon specific, articulable facts, commonly referred to as Terry stops, see Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), and (3) highly intrusive arrests and searches founded on probable cause." Wechsler v. Commonwealth, 20 Va. App. 162, 169, 455 S.E.2d 744, 747 (1995). An officer who develops reasonable suspicion that criminal activity is occurring may stop a person "in order to identify him, to question him briefly, or to detain him briefly, while attempting

-

to obtain additional information" in order to confirm or dispel his suspicions. Hayes v. Florida, 470 U.S. 811, 816, 105 S. Ct. 1643, 1647, 84 L. Ed. 2d 705 (1985).

The right to conduct a full search of a person is automatic only in the case of a custodial arrest. See Rhodes v. Commonwealth, 29 Va. App. 641, 644-46, 513 S.E.2d 904, 905-06 (1999) (en banc). An officer may not conduct a full search of a suspect simply because he is effecting a Terry stop, but he may conduct a pat-down search for weapons during a Terry stop if reasonable suspicion of criminal activity supports the stop and, additionally, the officer has reasonable, articulable suspicion that the person is armed and dangerous. See Adams v. Williams, 407 U.S. 143, 146, 92 S. Ct. 1921, 1923, 32 L. Ed. 2d 612 (1972); 4 Wayne R. LaFave, Search and Seizure § 9.5(a), at 246-47 (3d ed. 1996). Our review of the existence of reasonable suspicion involves application of an objective rather than subjective standard. See, e.g., Whren v. United States, 517 U.S. 806, 812-13, 116 S. Ct. 1769, 1774, 135 L. Ed. 2d 89 (1996). The exclusionary rule provides that items discovered in violation of these principles may not be admitted into evidence. Warlick v. Commonwealth, 215 Va. 263, 265, 208 S.E.2d 746, 747-48 (1974).

Here, the evidence, viewed in the light most favorable to the Commonwealth, was sufficient to support the trial court's implicit finding that the officers had reasonable suspicion to

-

believe appellant was personally involved in criminal activity. Detective Norris, who had worked as a "loss merchant" for four years, thought, based on his experience and his observations of appellant, that appellant was behaving strangely and might "steal something while in the store."  Thereafter, Norris saw a sales clerk take appellant's shopping bag and heard appellant call someone on his cell phone to report that he "needed some help in here."  Norris believed appellant was talking to someone who was elsewhere in the mall, and within two minutes, Norris saw another male enter the store with a large shopping bag and make eye contact with appellant.  That other male then went to the men's department, concealed a belt in his shopping bag, and rejoined appellant.  When a uniformed police officer walked through the store, appellant and his companion worked their way to the store's side door and exited into the parking lot.

These facts, viewed together by a police officer experienced in loss prevention, provided reasonable suspicion that appellant and his companion were involved in a shoplifting scheme and justified Detective Norris' request to Detective Bailey to "place [appellant] under investigative detention" while Detective Norris arrested appellant's companion and examined the contents of the bag the sales clerk had taken from appellant.

The objective facts did not, however, provide Detective Bailey with reasonable, articulable suspicion to believe that

-

appellant was armed and dangerous.  Detective Bailey's only justification for the pat-down was that appellant was "very jittery and nervous" and that Bailey believed appellant's reaction "was not normal for someone . . . in that kind of situation."

We previously have held that a person's extreme nervousness during a routine traffic stop for a speeding violation, standing alone, is insufficient to provide the reasonable suspicion necessary for a pat-down search.  Moore v. Commonwealth, 12 Va. App. 404, 406-07, 404 S.E.2d 77, 78 (1991).  In Moore, the stop took place during daylight hours while Moore was alone in his car.  Id. at 406, 404 S.E.2d at 78.  Moore made no attempt to evade the police and no unusual gestures to suggest that he might have a weapon on his person or inside the car.  Id.  The officer conducting the stop "admitted that it is common for a person to be nervous when stopped by the police."  Id.  Although the officer conducting the stop knew other officers had Moore under surveillance, he did not know the reason for the surveillance and was aware of no other basis for believing Moore might be armed and dangerous.  Id.  Under these facts, we held the officer improperly "based the pat-down on his subjective evaluation of Moore's nervousness" and that he lacked reasonable, articulable suspicion to believe Moore was armed and dangerous.  Id. at 406-07, 404 S.E.2d at 78.

-

We see no reason to distinguish appellant's case from Moore. Although the offense appellant was suspected of committing, shoplifting, was more serious than speeding, shoplifting is not the sort of crime with which weapons possession is routinely associated. Compare Logan v. Commonwealth, 19 Va. App. 437, 445, 452 S.E.2d 364, 369 (1994) (en banc) (observing that "[t]he relationship between the distribution of controlled substances . . . and the possession and use of dangerous weapons is now well recognized"). We hold that Detective Bailey's testimony that it was unusual for someone stopped by police for shoplifting to be nervous was objectively unreasonable as a matter of law and, in any event, that such testimony was insufficient, standing alone, to establish an objectively reasonable suspicion of weapons possession. Here, as in Moore, appellant made no unusual gestures indicating he might be armed, and Detective Bailey described no unusual bulges in appellant's clothing. Compare, e.g., James v. Commonwealth, 22 Va. App. 740, 745-46, 473 S.E.2d 90, 92 (1996) (upholding frisk of passenger who was in vehicle with person wanted on a felony warrant and who appeared nervous, failed to comply with officer's request to keep his hands on dashboard, and kept asking to exit the vehicle).

For these reasons, we reverse appellant's conviction for possession of cocaine and remand for further proceedings if the Commonwealth be so advised.

-

B.

MOTION TO SUPPRESS ROBBERY CONFESSION

A suspect must knowingly and intelligently waive his rights against self-incrimination and to the assistance of legal counsel in order for a confession made during a custodial interrogation to be found voluntary and, therefore, admissible in evidence against him.  See Morris v. Commonwealth, 17 Va. App. 575, 579, 439 S.E.2d 867, 870 (1994).  Assessing the voluntariness of a confession requires an examination of the totality of the circumstances to determine whether the statement is the "product of an essentially free and unconstrained choice by its maker," or whether the maker's will "has been overborne and his capacity for self-determination critically impaired." Schneckloth v. Bustamonte, 412 U.S. 218, 225, 93 S. Ct. 2041, 2046, 36 L. Ed. 2d 854 (1973).  In assessing the totality of the circumstances, the court must consider both "the details of the interrogation" and "the characteristics of the accused." Kauffmann v. Commonwealth, 8 Va. App. 400, 405, 382 S.E.2d 279, 281 (1989).

A defendant who has "expressed his desire to deal with the police only through counsel[] is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." Edwards v. Arizona, 451 U.S. 477, 484-85, 101 S. Ct. 1880, 1885,

-

68 L. Ed. 2d 378 (1981); see Michigan v. Jackson, 475 U.S. 625, 636, 106 S. Ct. 1404, 1411, 89 L. Ed. 2d 631 (1986). Where a defendant has invoked his right to counsel but subsequently initiates further contact with the police, "the trial court may admit the statement if it determines that the defendant thereafter 'knowingly and intelligently waived the right he had invoked.'" Quinn v. Commonwealth, 25 Va. App. 702, 712, 492 S.E.2d 470, 475 (1997) (quoting Smith v. Illinois, 469 U.S. 91, 96, 105 S. Ct. 490, 493, 83 L. Ed. 2d 488 (1984)).

Here, we assume without deciding that appellant invoked his right to counsel when he said to the officers that he told his mother he wished to talk to the officers but only with his lawyer present. Nevertheless, the evidence, viewed in the light most favorable to the Commonwealth, supports the trial court's conclusion that appellant thereafter voluntarily waived his right to counsel before confessing his participation in the robbery.

So viewed, the evidence establishes that the detectives came to talk to appellant only after receiving word that he wanted to speak to them. When appellant said he had told his mother to have his attorney present, the detectives treated this as an assertion of the right to counsel and prepared to leave. Detective Leonard told appellant he could call them the next day after making the necessary arrangements with his lawyer. When appellant said, "I want to talk to you," Detective Smith

-

re-advised appellant of his Miranda rights, and appellant signed a Miranda waiver form.

Appellant did not again request an attorney and did not seek to terminate the interview. At the beginning of the portion of the interview that was audiotaped and transcribed, appellant agreed that he had been advised of his Miranda rights and confirmed that he understood them. Appellant's only reference to counsel during the taped portion of the interview was at the end, when he said, "I wanted to talk to a lawyer." (Emphasis added). When Detective Smith responded, "That's not what your mom said" and "[t]hat's not what you agreed to here," appellant did not dispute these statements. Instead, he said merely that he was "so stupid" for "running [his] . . . mouth."

Appellant argues that his waiver was not voluntary because he was suffering from severe heroin withdrawal, which included confusion, nausea, shaking and sweating. As a result of his weakened physical condition, he contends he was more easily coerced into confessing. What appellant fails to acknowledge, however, is that the evidence regarding his condition was conflicting and that the trial court, as the finder of fact, was free to reject his testimony of impairment and to accept the testimony of Officers Leonard and Smith and appellant's own statements on the audiotaped portion of his confession. Although Leonard acknowledged that appellant may have reported being a heroin user and said something about "having a hard time

-

in there," Leonard testified that he believed the comment related to appellant's desire to smoke cigarettes, which he was unable to do because of the jail's no-smoking policy. Both detectives testified that appellant's physical appearance during the interview was normal and that they observed no symptoms of heroin withdrawal. Although appellant may have been tired, "nervous and confused about what he should do, . . . he seemed to understand and comprehend what [he and the officers] were talking about." Finally, the trial court expressly found that "[t]he best evidence of [appellant's] condition is the statement itself."

Other evidence further supported the trial court's conclusion that appellant's waiver of his right to counsel and his confession were voluntary. Although appellant was unable to smoke, the detectives provided him with soda and a candy bar. Further, appellant was no stranger to the criminal justice system and knew how to exercise his rights. He had been arrested on January 26, 1999, less than ten days earlier, on the shopping mall cocaine possession charge for which he was tried at the same time as the robbery offenses. Further, when appellant was initially arrested for the subject robbery offenses on the evening of February 3, 1999, the police informed him of his Miranda rights and, after signing a form acknowledging his understanding of those rights, he chose to exercise them by remaining silent. It was uncontested that

-

appellant remembered signing that form and understood its contents. Although he claimed not to have read or comprehended the contents of an identical form he signed less than twenty-four hours later, immediately before giving the challenged confession, the trial court found appellant "was aware of his rights and made a voluntary waiver of those rights by telling the detectives he would talk." Thus, our independent evaluation of the totality of the circumstances supports the trial court's conclusion that appellant's waiver of his right to counsel and his subsequent confession were voluntary. The finding of voluntariness implicitly encompassed a finding that the waiver was knowing and intelligent. See, e.g., Kauffmann, 8 Va. App. at 404-06, 382 S.E.2d at 281-82 (holding confession voluntary despite Fifth Amendment challenge without specifically discussing whether it was "knowing" and "intelligent").

In reaching this conclusion, the trial court was free to reject the testimony of Dr. George Bright regarding the effect of heroin withdrawal on appellant's ability to make a voluntary confession. See Witt, 215 Va. at 674, 212 S.E.2d at 297; see also Street v. Street, 25 Va. App. 380, 387, 488 S.E.2d 665, 668-69 (1997) (en banc). Bright's expert opinion regarding the effect of heroin withdrawal on appellant was based on appellant's own testimony of the amount of heroin he was using prior to his arrest and when he last used it. Appellant's testimony conflicted with the testimony of the detectives that

-

appellant appeared no more than nervous and tired and exhibited no physical signs of heroin withdrawal. Bright had not seen appellant for more than two and one half months prior to his arrest on the robbery charges and, therefore, had no independent knowledge of appellant's condition at the time of his arrest and interrogation. See Street, 25 Va. App. at 389, 488 S.E.2d at 669 (affirming trial court's rejection of expert testimony because it was based on information relayed by party and "[e]xperts do not determine the credibility of a witness").

Thus, we conclude, under the totality of the circumstances, that the trial court's denial of appellant's motion to suppress his confession was not erroneous. Because appellant's only challenge to the sufficiency of the evidence to support the robbery and related firearm convictions pertained to the court's ruling on the suppression motion, which we have upheld as proper, we affirm these convictions.

II.

For these reasons, we hold the denial of the motion to suppress the cocaine was erroneous, and we reverse the conviction for possessing cocaine and remand for further proceedings if the Commonwealth be so advised. We hold the trial court's denial of the motion to suppress the robbery

-

confession was not erroneous, and we affirm the robbery and

related firearm convictions.

<u>Affirmed in part,</u>
<u>and reversed</u>
<u>and remanded in part.</u>