COURT OF APPEALS OF VIRGINIA


Present: Judges Benton, Elder and Senior Judge Coleman
Argued at Chesapeake, Virginia


TREMAINE KEVIN WHITE

                                    MEMORANDUM OPINION[*] BY
v.    Record No. 0104-02-1          JUDGE LARRY G. ELDER
                                        DECEMBER 31, 2002
COMMONWEALTH OF VIRGINIA


        FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                    Thomas S. Shadrick, Judge

            William P. Robinson, Jr. (Robinson, Neeley &
            Anderson, on brief), for appellant.

            Robert H. Anderson, III, Senior Assistant
            Attorney General (Jerry W. Kilgore, Attorney
            General, on brief), for appellee.


     Tremaine Kevin White (appellant) appeals from his

convictions for four counts each of robbery, conspiracy and use

of a firearm in the commission of a felony, entered upon his

conditional guilty pleas. On appeal, he contends the trial

court erroneously denied his motion to suppress his confession

because his waiver of his Fifth Amendment rights to counsel and

silence was not voluntary, knowing and intelligent. We hold the

evidence, viewed in the light most favorable to the

Commonwealth, supported the trial court's ruling that

appellant's waiver was, in fact, voluntary, and we affirm.

---

     [*] Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

On appeal of a ruling on a motion to suppress, we view the evidence in the light most favorable to the prevailing party, here the Commonwealth. Mills v. Commonwealth, 14 Va. App. 459, 468, 418 S.E.2d 718, 722-23 (1992). "[W]e are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them[,] and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc). However, we review de novo the trial court's application of defined legal standards, such as whether a confession was voluntary, to the particular facts of the case. See Ornelas v. United States, 517 U.S. 690, 699, 116 S. Ct. 1657, 1663, 134 L. Ed. 2d 911 (1996); Mills, 14 Va. App. at 468, 418 S.E.2d at 723.

A suspect must knowingly and intelligently waive his rights against self-incrimination and to the assistance of legal counsel in order for a confession made during a custodial interrogation to be admissible in evidence against him. Morris v. Commonwealth, 17 Va. App. 575, 579, 439 S.E.2d 867, 870 (1994). Even when a suspect has waived his Miranda rights, his confession is inadmissible if it was involuntary for other reasons. See id.

Assessing whether a confession is voluntary requires an examination of the totality of the circumstances to determine

-

whether the statement is the "product of an essentially free and unconstrained choice by its maker" or whether the maker's will "has been overborne and his capacity for self-determination critically impaired." Schneckloth v. Bustamonte, 412 U.S. 218, 225, 93 S. Ct. 2041, 2046, 36 L. Ed. 2d 854 (1973). In assessing the totality of the circumstances, the court must consider both "the details of the interrogation" and "the characteristics of the accused." Kauffmann v. Commonwealth, 8 Va. App. 400, 405, 382 S.E.2d 279, 281 (1989).

"'Where a juvenile is involved, "[t]his includes evaluation of the juvenile's age, experience, education, background, and intelligence [in order to determine] whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights."'" Potts v. Commonwealth, 35 Va. App. 485, 495-96, 546 S.E.2d 229, 234 (quoting Roberts v. Commonwealth, 18 Va. App. 554, 557-58, 445 S.E.2d 709, 711 (1994) (quoting Fare v. Michael C., 442 U.S. 707, 717, 99 S. Ct. 2560, 2567, 61 L. Ed. 2d 197 (1979))), aff'd on reh'g en banc, 37 Va. App. 64, 553 S.E.2d 560 (2001).

> Although "it is desirable to have a parent, counsel or some other interested adult or guardian present when . . . a juvenile waives fundamental constitutional rights and confesses to a serious crime . . . , the mere absence of a parent or counsel does not render the waiver invalid." The absence of a parent is but one factor to be considered in the totality of the circumstances and is

-

> insufficient by itself to render [a
> juvenile's] confession involuntary.

Id. at 496, 546 S.E.2d at 234-35 (quoting Grogg v. Commonwealth,

6 Va. App. 598, 613, 371 S.E.2d 549, 557 (1988)).  Other factors

for consideration include "the purpose and flagrancy of any

police misconduct," "the length of the interview," and any

"moral and psychological pressures to confess emanating from

official sources."  Morris, 17 Va. App. at 579, 439 S.E.2d at

870.

Here, as appellant conceded on brief, the trial court was

free to reject as not credible some or all of the testimony of

appellant and his mother.[1]  Viewing the record in the light most

favorable to the Commonwealth, no evidence indicated that

Detective J.E. Nolan made any misrepresentations to appellant

about whether he would be permitted to leave the station when

the interrogation was over or whether appellant's mother

approved of appellant's talking to the detectives without her

being present.  The remaining evidence supported the trial

court's finding that appellant's confession was voluntary.

Although appellant was seventeen years old when the

challenged interview took place and his mother was not present,

his eighteenth birthday was less than three weeks after the

---

[1] Appellant asserted on brief that "[t]he instant case
presents a clear factual issue" and that Detective Nolan's
actions, "if true, are reprehensible."  (Emphasis added).

-

interview.  Although the evidence left open to question whether appellant had previously been questioned by the police, it established that appellant was literate, "a bright kid" and "a B student" in his eleventh grade classes.  Appellant denied having consumed any alcohol or drugs prior to the interview, was reasonably articulate when he answered the questions of Detectives Nolan and Grazia Moyers during the interview, and confirmed both verbally and in writing prior to the interview that he understood his Miranda rights.

When Detective Nolan asked appellant whether, keeping his rights in mind, he wished to talk to the detectives, appellant inquired whether his mother was "supposed to be [present for the interview] because [appellant was] a minor."  Detective Nolan responded that he decided to have appellant's mother wait in the lobby because he wanted appellant "to have an opportunity to make open statements without being embarrassed in front of his mother."  Detective Nolan then asked appellant, "[h]aving what has been read in mind," whether appellant wished to talk to him. Appellant responded, "Yes sir," endorsed the advisement of rights form, and answered Detective Nolan's questions.

Detective Nolan's tone and manner were even and non-threatening, and the entire interview lasted less than one hour.  Detective Nolan offered appellant something to drink before beginning the interview.  Although appellant confessed to committing the instant offenses, he unequivocally denied

-

participating in the robbery of a man in a suit in the vicinity of a particular gas station and in any robberies near Lynnhaven Mall or in any other jurisdictions, demonstrating his confession was "an essentially free and unconstrained choice." Schneckloth, 412 U.S. at 225, 93 S. Ct. at 2046; see also Arthur v. Commonwealth, 24 Va. App. 102, 107-08, 480 S.E.2d 749, 752 (1997) (in determining effect of false incriminating documents on voluntariness of confession, noting defendant's ability "to make choices" by declining, during several prior interviews with police, to incriminate himself). "He never broke down and became 'putty in the hands' of the interrogator or a 'parrot' for words put into his mouth." Rodgers v. Commonwealth, 227 Va. 605, 617, 318 S.E.2d 298, 305 (1984).

Finally, we would reach the same conclusion even if we were to construe the trial court's statements on the record as factual findings that Nolan did, in fact, tell appellant that "[he could] go home" after the interview was over and that "[appellant's] mother said it was okay" for appellant to speak to the police without her being present. If the trial court believed Detective Nolan made these statements, the totality of the circumstances nevertheless supports the trial court's conclusion that appellant's confession was voluntary. A lie by a law enforcement officer "does not, in and of itself, require a finding that a resulting confession is involuntary." Id. at 616, 318 S.E.2d at 304.

-

> Miranda's prohibition against threats,
> trickery or cajolery was not intended to
> preclude in all circumstances trickery
> concerning merely one aspect of the factual
> strength of the case against the accused
> . . . [particularly when n]othing about the
> misrepresentation impede[s the defendant's]
> . . . "ability to understand the nature of
> his rights and the consequences of
> abandoning them."

Foster v. Commonwealth, 8 Va. App. 167, 174-75, 380 S.E.2d 12, 16 (1989) (quoting Moran v. Burbine, 475 U.S. 412, 424, 106 S. Ct. 1135, 1142, 89 L. Ed. 2d 410 (1986)).

Here, although Nolan's alleged misstatements were not about "the factual strength of the case," they nevertheless were factual rather than legal in nature and did nothing to "impede [appellant's] . . . 'ability to understand the nature of his rights and the consequences of abandoning them'" under the facts of this case. Id. Assuming these misstatements occurred, we hold the totality of the circumstances supports the conclusion that appellant's confession was voluntary.

For these reasons, we hold the trial court's denial of appellant's motion to suppress was not erroneous, and we affirm appellant's convictions.

Affirmed.

-

Benton, J., dissenting.

"[T]he rule against admitting coerced confessions [is based] primarily, if not exclusively, on notions of due process."  Dickerson v. United States, 530 U.S. 428, 433 (2000).

> The ultimate test remains that which has been the only clearly established test in Anglo-American courts for two hundred years: the test of voluntariness.  Is the confession the product of an essentially free and unconstrained choice by its maker?  If it is, if he has willed to confess, it may be used against him.  If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process.

Culombe v. Connecticut, 367 U.S. 568, 602 (1961).

The Supreme Court has "never abandoned this . . . jurisprudence, and . . . , continue[s] to exclude confessions that were obtained involuntarily."  Dickerson, 530 U.S. at 434.  Thus, the Court recently reaffirmed the following principle:

> [T]he test . . . [is] an inquiry that examines "whether a defendant's will was overborne" by the circumstances surrounding the giving of a confession.  The due process test takes into consideration "the totality of all the surrounding circumstances -- both the characteristics of the accused and the details of the interrogation."  The determination "depends upon a weighing of the circumstances of pressure against the power of resistance of the person confessing."

Id. (citations omitted).  See also Malinski v. New York, 324 U.S. 401, 404 (1945) (holding that "if all the attendant

-

circumstances indicate that the confession was coerced or compelled, it may not be used to convict a defendant").

Prior to the videotaping of the confession, Detective Noland talked to White and separately to White's mother. Detective Noland did not testify at trial. I believe the record reflects that the trial judge accepted White's testimony concerning the circumstances that occurred prior to the videotaping of the interrogation. White testified that shortly after his mother told him not to speak to Detective Noland, Detective Noland spoke to White's mother. When Detective Noland returned, he lied to White and told him his mother said he should answer Noland's questions. He also falsely promised White that after he answered Noland's questions his mother would take him home. The trial judge said that he had "to hand it to [White] for his honesty," that "he was very honest," and that his testimony was "refreshing -- candid." He ruled, however, as follows:

> [R]egardless of whether we approve or
> disapprove of tactics that the police
> sometimes use in promising that if they
> speak to the judge or promising to speak to
> the Commonwealth or promising you can go
> home or saying that your mother said it was
> okay, I don't know of any case law that says
> that's enough to set it aside.
>
> I'm going to determine that he was
> properly advised and that it was a voluntary
> waiver that he -- what he said thereafter
> was admissible into evidence.

-

I believe the detective's misrepresentations were sufficient to overbear White's will.  White had never before been interrogated by the police and relied upon the detective's statement that his mother told him to answer the detective's questions.  His lack of "[p]revious exposure to the criminal justice system" is a factor that weighs against a finding of voluntariness.  Green v. Commonwealth, 223 Va. 706, 710, 292 S.E.2d 605, 608 (1982).  The detective's lie that White would go home after cooperating further undermined the voluntariness of his statement.  These factors make abundantly clear the conclusion that "the confession [was not] the product of an essentially free and unconstrained choice by [White]."  Dickerson, 530 U.S. at 433.

The Supreme Court has addressed the question of voluntariness of a juvenile's confession in circumstances applicable to this case.

> [The period] -- during which time the boy's mother unsuccessfully tried to see him and he was cut off from contact with any lawyer or adult advisor -- gives the case an ominous cast. . . . But a [juvenile], no matter how sophisticated, is unlikely to have any conception of what will confront him when he is made accessible only to the police.  That is to say, we deal with a person who is not equal to the police in knowledge and understanding of the consequences of the questions and answers being recorded and who is unable to know how to protect his own interests or how to get the benefits of his constitutional rights . . . .  He cannot be compared with an adult in full possession of his senses and

-

> knowledgeable of the consequences of his admissions.  He would have no way of knowing what the consequences of his confession were without advice as to his rights -- from someone concerned with securing him those rights -- and without the aid of more mature judgment as to the steps he should take in the predicament in which he found himself.  A lawyer or an adult relative or friend could have given the petitioner the protection which his own immaturity could not.  Adult advice would have put him on a less unequal footing with his interrogators.  Without some adult protection against this inequality, a [juvenile] would not be able to know, let alone assert, such constitutional rights as he had.  To allow this conviction to stand would, in effect, be to treat him as if he had no constitutional rights.

Gallegos v. Colorado, 370 U.S. 49, 54-55 (1962).

I would hold that the circumstance proved White's statement was not voluntary.  The officer's trickery and lies exerted sufficient pressure to overcome White's "power of resistance," Dickerson, 530 U.S. at 434, and the considered advice White received from his mother.  For these reasons, I would reverse the convictions and remand for a retrial.