*718 BENTON, Judge,
dissenting.
For the reasons that follow, I would reverse the convictions and remand for a new trial.
I.
The Fourth Amendment provides that the “right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.” U.S. Const, amend IV. This protection proscribes governmental action; however, the principle is well recognized that a private party may “be regarded as having acted as an ‘instrument’ or agent of the state.” Coolidge v. New Hampshire, 403 U.S. 443, 487, 91 S.Ct. 2022, 2049, 29 L.Ed.2d 564 (1971).
Whether a private party should be deemed an agent or instrument of the Government for Fourth Amendment purposes necessarily turns on the degree of the Government’s participation in the private party’s activities, a question that can only be resolved “in light of all the circumstances.” The fact that the Government has not compelled a private party to perform a search does not, by itself, establish that the search is a private one.
Skinner v. Railway Labor Executives’ Ass’n, 489 U.S. 602, 614-15, 109 S.Ct. 1402, 1411-12, 103 L.Ed.2d 639 (1989) (citations omitted). We have noted that this standard suggests a two-part analysis: “(1) whether the government knew of and acquiesced in the search, and (2) whether the search was conducted for the purpose of assisting law enforcement efforts or for the purpose of furthering the private party’s ends.” Mills v. Commonwealth, 14 Va.App. 459, 463-64, 418 S.E.2d 718, 720 (1992). In conducting this analysis, “the ultimate question whether a private person is actually a government agent [is] a question that requires the application of a legal concept (agency) to facts.” United States v. Martin, 195 F.3d 961, 963 (7th Cir.1999). According to the usual standard of review, this legal determination of agency is subject to de novo review on appeal. See Ornelas v. United States, 517 U.S. 690, 699, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996).
*719 II.
The evidence unambiguously established that Unknownuser’s motivation for illegally hacking into William Adderson Jarrett’s computer was to assist the law enforcement authorities in arresting and prosecuting child molesters. The record indicates that Unknownuser first contacted law enforcement authorities in July 2000 when he sent an e-mail message to the Montgomery, Alabama Police Department stating that he “found a child molester on the net.” He then offered to send information he had stolen from Steiger’s computer for their use in a prosecution. Throughout his correspondence in the Steiger matter, Unknownuser urged the law enforcement authorities to act promptly, and he consistently requested that the authorities keep him informed. Later, to facilitate his reporting of child molesters, he requested “an e-mail [address] of an FBI agent dealing with these kinds of crimes.” Although the trial judge made no specific finding on the issue, I agree with the majority opinion that the F.B.I. “eoncedefd] ... that Unknownuser’s motivation for conducting the illicit searches stemmed solely from his interest in assisting law enforcement authorities.” United States v. Jarrett, 338 F.3d 339, 345 (4th Cir.2003). Indeed, on brief the Commonwealth does not contest this issue and asserts “it is likely Unknown User’s primary purpose was to assist law enforcement officers in prosecuting child pornographers.” I would hold that Unknownuser acted for the purpose of assisting law enforcement efforts and, therefore, the evidence established the second part of the Mills analysis.
A significant factor in the first part of the analysis— “whether the government knew of or acquiesced in the search,” Mills, 14 Va.App. at 463, 418 S.E.2d at 720,—is the determination whether “the Government did more than adopt a passive position toward the underlying private conduct.” Skinner, 489 U.S. at 615, 109 S.Ct. at 1412. Thus, the dispositive issue on appeal is whether the trial judge erred when he ruled that the evidence failed to establish “governmental action” and “that [Unknownuser] was independent of any act of the State or Federal government.”
*720 The evidence proved that on December 4, 2001 Unknownuser sent to the F.B.I. e-mails containing materials he illegally obtained by hacking into Jarrett’s computer and copying Jarrett’s files. The evidence further proved that the F.B.I. had learned as early as July 2000 that Unknownuser had been performing illegal computer activities and that Unknownuser had obtained files by means of unlawful entry into Steiger’s computer. After the F.B.I. began receiving e-mail files from Unknownuser in July 2000, the F.B.I. did not inform Unknownuser that his activity was illegal or tell him to stop his activities.[8] Instead, the F.B.I. encouraged him to continue those activities for the benefit of law enforcement prosecution. In November 2000, an-F.B.I. agent assured Unknownuser that “US authorities do not desire to prosecute [him]” and would not arrest him. In that same month, an F.B.I. agent sent the following e-mail:
Thank you for being so honest. Please check your e-mail periodically as I may send you some questions. It will be your option to answer them. If you still have any additional images you captured from [Steiger’s] computer that you believe will help this case, you may forward them to me at American Embassy.... Again its your option. Thank you for your help in stopping this man and thank you for your honesty. If you want to bring other information forward, I am available.
(Emphasis added).
In United States v. Knoll, 16 F.3d 1313 (2nd Cir.1994), the evidence established that an Assistant U.S. Attorney told a *721 private individual, who had stolen documents from the defendant and delivered them to the government in hopes of getting favorable treatment on his own criminal charges, that he needed to “get ... more information,” that “you’ve got to turn more over,” and that “if there’s stuff out there, you’ve got to turn it over.” Id. at 1320. In view of this evidence, the Second Circuit held that the government “tacitly suggested and condoned further searching” of defendant’s private documents. Id. at 1319-20. Likewise, in this case, the F.B.I. agent’s e-mail to Unknownuser contained an unambiguous solicitation “to bring other information forward.” The context of the message clearly reveals that this solicitation was made apart from the request to send “additional images ... from [Steiger’s] computer.”[9] Furthermore, in view of the previous assurance of immunity from arrest and prosecution, this solicitation moved the government beyond a mere “passive position toward the underlying private conduct.” Skinner, 489 U.S. at 615, 109 S.Ct. at 1411.
The record indicates that several months after the F.B.I. agent solicited Unknownuser “to bring other information forward,” Unknownuser sent an e-mail on December 3, 2001, indicating that he “found another child molester” and that he had “collected all the evidence.” A police officer responded that “the FBI has asked that you send whatever information you have regarding this criminal complaint to my e-mail *722 address.” Consistent with the earlier solicitation, Unknownuser then sent various files that he obtained illegally from Jarrett’s computer.
After the F.B.I. received these files by e-mail, an F.B.I. agent continued to correspond with Unknownuser and sent an e-mail that included the following:
But if you should happen across such pictures as the ones you have sent to us and wish us to look into the matter, please feel free to send them to us. We may have lots of questions and have to e-mail you with the questions. But as long as you are not “hacking” at our request, we can take the pictures and identify the men and take them to court. We also have no desire to charge you with hacking. You are not a U.S. citizen and are not bound by our laws.
This further solicitation evidenced again the unambiguous message the F.B.I. earlier sent to Unknownuser: continue your criminal conduct and send the fruits of your efforts to us for prosecution.
In summary, the record suggests that Unknownuser was not acting at the urging of the F.B.I. when he first searched Steiger’s computer and forwarded files from that computer to the F.B.I. The record reveals, however, that after that initial contact, the F.B.I. developed a relationship with Unknownuser that was intended to exploit Unknownuser’s capabilities. Indeed, the F.B.I. agents actively encouraged Unknownuser to continue his activities in the following manner: (1) requesting his assistance in accessing Steiger’s computer after they seized it, (2) informing him that they would neither arrest nor prosecute him for his criminal activities, (3) thanking him and praising him for his hunt for abusers, (4) assuring him that his information was valuable to them in finding and prosecuting law violators, (5) seeking his continued contact with the F.B.I., and (6) requesting him to “bring forward other information” that he accessed by hacking into computers. In so doing, “[t]he government ... knowingly acquiesce[d] in and encourage[d] directly or indirectly a private citizen to engage in activity which [the government] is prohibited from pursu *723 ing____” United States v. Walther, 652 F.2d 788, 793 (9th Cir.1981).
I would hold that the F.B.I. agent’s assurances of immunity and solicitation for “other information” from the computer hacker were more than sufficient to prove the government had encouraged, solicited, and acquiesced in Unknownuser’s activities, which were designed to assist law enforcement efforts. Those assurances of immunity and solicitations for information were extended before Unknownuser sent the e-mails and files to the F.B.I. containing information from Jarrett’s computer, and they prove the F.B.I. was aware of Unknownuser’s activities, acquiesced in those activities, and encouraged him to send to the F.B.I. the fruits of his activity. For these reasons, I would hold that the trial judge erred in denying the motion to suppress evidence, and I would reverse the convictions and remand for a new trial.

. Although Unknownuser indicated in an e-mail message that he was "from Turkey,” no evidence in the record established that he was a foreign national or that he could not be prosecuted in the United States. Although Unknownuser indicated that he could not afford to telephone because of the prohibitive cost of international telephone calls, the record indicates the F.B.I. learned of a telephone number in the United States registered to Unknownuser. After an F.B.I. agent left a message on the voice mail service connected to that telephone, Unknownuser sent an e-mail indicating he had received the message and commented on the agent's southern accent.

. Although Unknownuser protested in an e-mail message that he lacked fluency in the English language, an F.B.I. agent testified that Unknownuser "spoke English very well." Moreover, the following e-mail, as did many of his other e-mails, suggested no lack of facility with the language:
Hello again. I know what had happened to Dr. Steiger. I made another criminal complaint about a child molester in Richmond, VA. I asked Major Kevin J. Murphy in Montgomery PD to help me. He said "send me all the files. I’ll send them to FBI and they will contact you.” It's been 10 day and nobody called me. Are you retired or still in FBI? Please help me. I really want to know whats going on.
Indeed, the F.B.I.'s communications to Unknownuser and Unknownuser's responses to those communications belie the notion that Unknownuser lacked fluency in the English language.